Jeremy D. Bailie (Pro Hac Vice)
Florida Bar No. 118558
**Weber, Crabb & Wein, P.A.**
Telephone: (727) 828-9919
Facsimile: (727) 828-9924
Jeremy.Bailie@webercrabb.com
5453 Central Avenue
St. Petersburg, Florida 33710

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| TERRI LESLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-00177-ABJ |
| | ) | |
| HUGH BENNETT, SUSAN BENNETT, | ) | |
| AND KEVIN BENNETT, | ) | |
| | ) | |
| Defendants, | ) | |

---

## DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

---

JEREMY D. BAILIE, ESQ. (Pro Hac Vice)
Florida Bar No. 118558
WEBER, CRABB & WEIN, P.A.
5453 Central Avenue
St. Petersburg, Florida 33710
Telephone: (727) 828-9919
Facsimile: (727) 828-9924
Primary: Jeremy.Bailie@webercrabb.com
Secondary: honey.rechtin@webercrabb.com
*Attorneys for Defendant*

i

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ..........................................................................ii

TABLE OF AUTHORITIES ...................................................................iv

INTRODUCTION .................................................................................. 1

BACKGROUND FACTS ......................................................................... 1

LEGAL STANDARD ............................................................................. 6

MEMORANDUM OF LAW ..................................................................... 7

I.  DEFENDANTS DID NOT CONSPIRE TO VIOLATE PLAINTIFF'S CIVIL RIGHTS NOR DOES SECTION 1985(3) APPLY TO PLAINTIFF'S CLAIMS ..................................................................... 8

    A. Plaintiff Fails Section 1985's Requirement to Plead She Has Been Subjected to Class-Based Animus ............................................. 8

    B. Plaintiff Fails to Identify Any Right that is Protected Against Private Conspiracies ..................................................................... 11

II.  PLAINTIFF FAILS TO STATE A CLAIM FOR CIVIL CONSPIRACY ..................................................................................... 12

III.  PLAINTIFF'S CLAIMS FOR DEFAMATION BASED ON DEFENDANTS' REPORTING OF A POTENTIAL CRIME FAIL AS A MATTER OF LAW ..................................................................... 13

    A. Plaintiff's Claims are Time-Barred ....................................... 14

    B. Plaintiff Fails to Plead Defendants Acted with Actual Malice ........... 14

IV.  PLAINTIFF'S REMAINING DEFAMATION CLAIMS ARE TIME-BARRED AND DO NOT SURVIVE CONSTITUTIONAL SCRUTINY ............................................................................................. 16

    A. Plaintiff's Claims are Time-Barred ....................................... 16

B. Plaintiff's Claims are Defeated by Defendants' First Amendment Rights to Free Speech and Right to Petition ..................................... 16

V.    PLAINTIFF DID NOT PLEAD AN INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM .................................................... 21

VI.   PLAINTIFF'S ABUSE OF PROCESS CLAIM FAILS SINCE THERE WAS NO PROCESS ISSUED AGAINST HER ........................... 24

A. Plaintiff's Claim is Time-Barred ................................................. 24

B. Plaintiff Has Not (and Cannot) Plead an Abuse of Process Since No Process was Issued ............................................................... 24

CONCLUSION ............................................................................................. 25

CERTIFICATE OF SERVICE .................................................................... 27

## TABLE OF AUTHORITIES

<u>**Federal Cases**</u>                                                                                                    <u>**Page(s)**</u>

*Advantor Capital Corp. v. Yeary,*
    136 F.3d 1259 (10th Cir. 1998) ......................................................................... 25

*Arkansas Educ. Television Com'n v. Forbes,*
    523 U.S. 666 (1998) ......................................................................................... 19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................. 6, 7, 13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................... 6

*Borough of Duryea, Pa. v. Guarnieri,*
    564 U.S. 379 (2011) ......................................................................................... 20

*Bray v. Alexandria Women's Health Clinic,*
    506 U.S. 263 (1993) .................................................................................. 8, 9, 12

*Brown v. Reardon,*
    770 F.2d 896 (10th Cir. 1985) ......................................................................... 10

*Cantu v. FlextronicsAm., LLC,*[1]
    2:12-CV-00279-ABJ, 2014 WL 12768318 (D. Wyo. Aug. 21, 2014) ..................... 14, 16

*Carey v. Brown,*
    447 U.S. 455 (1980) ......................................................................................... 20

*Connick v. Myers,*
    461 U.S. 138 (1983) ......................................................................................... 20

*Consol. Edison Co. of New York, Inc. v. Pub. Serv. Comm'n of New York,*
    447 U.S. 530 (1980) ......................................................................................... 19

*Downie v. Powers,*
    193 F.2d 760 (10th Cir. 1951) ......................................................................... 12

*Gallagher v. Neil Young Freedom Concert,*
    49 F.3d 1442 (10th Cir. 1995) ......................................................................... 12

---

[1] A copy of this opinion is included as Appendix A.

*Griffin v. Breckenridge,*
    403 U.S. 88 (1971)..................................................................................8, 9

*Hustler Magazine, Inc. v. Falwell,*
    485 U.S. 46 (1988)......................................................................................22

*Jacobellis v. State of Ohio,*
    378 U.S. 184 (1964) ...................................................................................18

*McDonald v. Smith,*
    472 U.S. 479 (1985) ...................................................................................20

*Miller v. California,*
    413 U.S. 15 (1973).....................................................................................18

*N. A. A. C. P. v. Claiborne Hardware Co. ,*
    458 U.S. 886 (1982) ...................................................................................20

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) .............................................................................14, 19

*Robbins v. Oklahoma,*
    519 F.3d 1242 (10th Cir. 2008) ...................................................................6

*Rosenblatt v. Baer,*
    383 U.S. 75 (1966)......................................................................................14

*Savant Homes, Inc. v. Collins,*
    809 F.3d 1133 (10th Cir. 2016)...................................................................13

*Schalk v. Gallemore,*
    906 F.2d 491 (10th Cir. 1990) ....................................................................20

*Shelley v. Kraemer,*
    334 U.S. 1 (1948)..................................................................................12, 13

*Thomas v. Collins,*
    323 U.S. 516 (1945) ...................................................................................20

*Tilton v. Richardson,*
    6 F.3d 683 (10th Cir. 1993) ...................................................................12, 13

*United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott,*
   463 U.S. 825 (1983) ........................................................................... 8, 9, 10

*Wayte v. United States,*
   470 U.S. 598 (1985) .................................................................................. 21

*Westenbroek v.Fraternity,[2]*
   23-CV-51-ABJ, 2023 WL 5533307 (D. Wyo.Aug. 25, 2023) ................................. 2, 6, 7

*Wilhelm v. Cont'l Title Co.,*
   720 F.2d 1173 (10th Cir. 1983) ............................................................. 9, 10


**State Cases**

*Bosler v. Shuck,*
   714 P.2d 1231 (Wyo. 1986) ...................................................................... 25

*Cook v. Shoshone First Bank,*
   2006 WY 13 (Wyo. 2006) ........................................................................ 22

*Dean v. Kochendorfer,*
   237 N.Y. 384 (1924) .............................................................................. 24

*Dworkin v. L.F.P., Inc. ,*
   839 P.2d 903 (Wyo. 1992) ....................................................................... 19

*Hatch v. State Farm Fire & Cas. Co.,*
   930 P.2d 382 (Wyo. 1997) ....................................................................... 22

*Hill v. Stubson,*
   2018 WY 70 (Wyo. 2018) ........................................................................ 14

*Hoblyn v. Johnson,*
   2002 WY 152 (Wyo. 2002) ............................................................... 21, 22, 23

*Larsen v. Banner Health Sys.,*
   2003 WY 167 (Wyo. 2003) ....................................................................... 22

*Leithead v. Am. Colloid Co.,*
   721 P.2d 1059 (Wyo. 1986) ...................................................................... 22

---

[2] A copy of this opinion is included as Appendix B.

*Spence v. Flynt,*
   816 P.2d 771 (Wyo. 1991) ................................................................................... 22

*The Tavern, LLC v. Town of Alpine,*
   2017 WY 56 (Wyo. 2017) ................................................................................... 24

*White v. Shane Edeburn Const., LLC,*
   2012 WY 118 (Wyo. 2012) ................................................................................. 13

## **Federal Statutes**

42 U.S.C. § 1985(3) ..................................................................................... *passim*

## **State Statutes**

Wyo. Stat. § 1-3-105(a)(v) ......................................................................... 14, 16, 24

## **Federal Rules**

Fed. R. Civ. P. 8 ................................................................................................. 6

## INTRODUCTION

Plaintiff, Terri Lesley, was a public figure and government official who placed herself in the forefront of an incredibly divisive issue being debated throughout our country—materials in libraries containing sexual themes and images that many believe are not appropriate for children's consumption. Like many citizens, Defendants voiced their concerns in the forums available to them—the county commission, the library board, and by meeting with Ms. Lesley. And Defendants were not alone in their concern. Many citizens in the community were similarly concerned about the materials being placed and kept in the library's children's section.

Ultimately, Ms. Lesley was terminated by the government officials that controlled her job—not Defendants—for her failure to perform in the role as they wished her to perform. In retaliation for Defendants' exercising their First Amendment rights, Ms. Lesley has filed this lawsuit against Defendants attempting to lay the blame for the results of her actions at Defendants' feet. As explained herein, Ms. Lesley's claims irreconcilably conflict with Defendants' First Amendment rights, are time-barred, and otherwise fail to state a cause of action.

Defendants, Hugh Bennett, Susan Bennett, and Kevin Bennett, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), hereby file this Motion to Dismiss and request this Court dismiss Plaintiff's Amended Complaint with prejudice.

## BACKGROUND FACTS

At the outset, for this Court to conduct its review, the Amended Complaint must be stripped of its bare legal conclusions and incendiary rhetoric—leaving only the well-

pled factual allegations regarding Defendants' actions. *Westenbroek v. Fraternity*, 23-CV-51-ABJ, 2023 WL 5533307, at *4, n.1 (D. Wyo. Aug. 25, 2023) (reviewing a similar Complaint that despite containing seventy-two pages, only included four-and-a-half pages with the actual claims).[3] For instance, Plaintiff begins her Complaint by describing her history of involvement in library work, beginning with her birth and early childhood. *See* Doc. 13, ¶¶ 8—28. Plaintiff then describes actions taken by members of the Campbell County Commission, her bosses, relating to what she describes as LGBTQIA+ books in the Campbell County library system. *See* Doc. 13, ¶¶ 29—49. These allegations are irrelevant and have nothing to do with Defendants.

The Bennetts were first mentioned when Plaintiff alleged they spoke at the County Commission meeting on July 7, 2021, and voiced their objection to their government including books they found morally objectionable in the children's section of a library funded by taxpayer dollars. *See* Doc. 13, ¶ 52 (Hugh Bennett); ¶ 53 (Kevin Bennett); and ¶ 54 (Susan Bennett). After noting the books Defendants wished to be moved from the children's section of the library (Doc. 13, ¶¶ 55), Plaintiff then pointed to statements made by *other* members of the community that had no connection to the Bennetts. *See* Doc. 13, ¶ 57.

Plaintiff, again wandering from allegations about Defendants' actions, describes an incident she alleges occurred when one of her bosses—a county commissioner—wrote to her and expressed uneasiness about an upcoming magician show to be held at the

---

[3] Plaintiff's Shotgun Pleading style, incorporation of all the allegations of the foregoing paragraphs into each subsequent count, muddies the water and prevents this Court, or Defendants, from ascertaining which facts support which claim for relief.

county library. *See* Doc. 13, ¶¶ 60—78. The only involvement Plaintiff alleges (with any facts) is that Kevin and Hugh Bennett appeared *at a County Commission meeting* and voiced their opposition to the performance occurring at the public library. *See* Doc. 13, ¶¶ 80—83. Plaintiff then alleges certain members of the County Commission spoke among themselves about organizing efforts in the community to remove books from the public library with which the commissioners disagreed. *See* Doc. 13, ¶¶ 84—86.

Plaintiff then alleges Defendant, Hugh Bennett, published a print magazine (Anybody's Autos) wherein he described his efforts to "advocate for [the magic show's] cancellation." *See* Doc. 13, ¶¶ 87. Plaintiff then seeks to tie the actions of an organization "MassResistance" in other situations, in other states, to Defendants, but provides no facts for this leap in logic. Plaintiff only alleges Kevin Bennett was the "founder of the MassResistance Wyoming Chapter" and that he "organized a booth at the County Fair in August 2021" allegedly seeking to persuade others in the community of his views about the library's choice of books and the magician performance. *See* Doc. 13, ¶¶ 95. Plaintiff then alleges that this group, MassResistance Wyoming (not Defendants), paid for billboards that invited viewers to get involved in this issue, namely, by contacting their "County Commissioners" and telling them there that are "inappropriate youth books in library." *See* Doc. 13, ¶ 97.

Following this, Plaintiff again points to the community at large (¶¶ 98—106; 111—115) and attempts to cast (without any factual allegation) the Bennetts as the leaders of everyone who came to speak at the County Commission, including the County Commissioners. Again, Plaintiff repeatedly only points to comments made *at the County*

*Commission* meeting where the Bennetts voiced their displeasure with the actions taken by Plaintiff, a public employee controlled by the County Commission. *See* Doc. 13, ¶¶ 108—110; 119. She provides no other facts showing any organizing efforts or facts to show the Bennetts led any type of group.

The next chapter in Plaintiff's story regards Hugh and Susan Bennett's purported attempt to "imprison[]" Plaintiff for not removing the books Mrs. Bennett found objectionable. *See* Doc. 13, p. 25 ("Hugh and Susan Bennett . . . Try to Have Terri Lesley Arrested and Imprisoned"). In sum, while Plaintiff belabors each step in the process, the crux of the matter is that Hugh and Susan Bennett went to the Campbell County Sheriff's Office and allegedly "formally accused" Plaintiff of "offering and disseminating obscene material to children" at the library. *See* Doc. 13, ¶ 122. They purportedly "filed a criminal complaint against [Plaintiff]." *See* Doc. 13, ¶ 125. Apparently, the Campbell County Sheriff was not sure whether the facts brought before him were subject to prosecution, so he referred the matter to the Campbell County Attorney's office for a second opinion. *See* Doc. 13, ¶¶ 136—38.

Plaintiff creatively cuts from Ms. Bennett's testimony before the County Commission to create the illusion that the Bennetts had contacted the Sheriff's office as a part of some ultimatum—Plaintiff would have to remove the books, or they would call the police. *See* Doc. 13, ¶ 125—28. In fact, the opposite is true. The quoted statements merely present the opposite scenario—Plaintiff engaged in conduct the Bennetts believed might have violated the law and they contacted the appropriate authority *asking* if that was a violation of the law. *See* Doc. 13, ¶ 128. And Mrs. Bennett's

statement in this context makes sense. Of course, they would not have contacted law enforcement had Plaintiff not engaged in the behavior they believed to be illegal. At no point does Plaintiff point to any comment by Defendants that they *are in the future* going to file a criminal charge if Plaintiff did not do their bidding.

In fact, apparently this was not an easy analysis even for the County Attorney assigned to this matter. Plaintiff alleges the County Attorney had to "devote[] considerable time to research the criminal statutes and attendant case law" to make the charging decision in this case. *See* Doc. 13, ¶ 138. The crux of the attorney's analysis was that the materials referenced "did not meet the legal criteria for being considered 'obscene' as defined by Wyoming law," an analysis the Bennetts strongly disagreed with (as they had the right to do). *See* Doc. 13, ¶ 137. Plaintiff characterizes the Bennetts' speaking about the charging decision as some nefarious scheme, but, in reality, her allegations merely show the Bennetts spoke at public meetings disagreeing with the charging decision by the County Attorney's office. *See* Doc. 13, ¶ 141—46. Plaintiff then, as before, turns the focus to *other* members of the community and blames the Bennetts for their actions. *See* Doc. 13, ¶ 148. Plaintiff provides no factual basis to blame Defendants for the actions of others.

Finally, Plaintiff ends where it all began, she places the blame for all her troubles at the feet of the Bennetts. The Bennetts did not sit on the Library Board. The Bennetts did not sit on the County Commission. Each action of both of those boards, through their appropriately elected and selected members, was in no way controlled by the Bennetts. *See* Doc. 13, ¶ 154—198.

In sum, Plaintiff paints with a broad-brush alleging Defendants are responsible for the behavior of the Campbell County Library Board, Campbell County Commission, and essentially all other members of the community that expressed similar sentiments as the Bennetts. Plaintiff stretches much too far. Defendants simply advocated in the appropriate forums petitioning their government officials to take steps they felt should be followed. Plaintiff may strongly disagree with the actions ultimately taken by the government, but the blame does not lie with the Bennetts, nor are the Bennetts legally liable for exercising their First Amendment rights.

## **LEGAL STANDARD**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A motion under Rule 12(b)(6) tests the sufficiency of the complaint and whether that "short and plain" statement has been provided. *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008). Although Rule 8 does not require "detailed factual allegations" it demands more than an unadorned accusation that the defendant caused harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint does not suffice if it tenders "naked assertions devoid of further factual development." *Id.* (quoting *Bell Atlantic Corp.*, 550 U.S. at 557). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Westenbroek*, 23-CV-51-ABJ, 2023 WL 5533307, at *4. "*Iqbal* clarified that 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Ashcroft*, 556 U.S. at 678–79).

## **MEMORANDUM OF LAW**

Ms. Lesley's complaint brings six claims: (1) a violation of the Ku Klux Klan Act (42 U.S.C. § 1985(3)) to "marginalize and harm LGBTQ+ community members and remove LGBTQ+ themed or content including books from the library system, in violation of the rights of Ms. Lesley and other protected persons."; (2) Civil Conspiracy "to deny the LGBTQ community the equal privileges and immunities of citizenship, and the use, benefits and privileges of property and/or contractual relationships."; (3) defamation against Hugh and Susan Bennett based on the statements purportedly made to the Campbell County Sheriff's Office; (4) defamation against all Defendants based on allegations that Defendants stated Plaintiff "committed crimes" and purportedly accused Plaintiff of "child abuse"; "pornography"; and "felonious conduct."; (5) intentional infliction of emotional distress against all Defendants for allegedly "subjecting Plaintiff to a constant barrage of toxic, harmful, unlawful, threatening statements"; and (6) abuse of process against Hugh and Susan Bennett for the "filing of a criminal complaint" with the Campbell County Sheriff's Office.

Each claim fails to state a cause of action. Not only are much of Plaintiff's claims time-barred, but Plaintiff seeks to impose liability for Defendants exercising their constitutional rights. To permit these claims to move forward would have a profound chilling effect on citizens' First Amendment rights and the ability of citizenry to object to actions/inactions by government officials. This Court should dismiss this Complaint.

# I.   DEFENDANTS DID NOT CONSPIRE TO VIOLATE PLAINTIFF'S CIVIL RIGHTS NOR DOES SECTION 1985(3) APPLY TO PLAINTIFF'S CLAIMS

Plaintiff's primary claim, and the sole basis for jurisdiction in this Court, is her claim for discrimination based on 42 U.S.C. § 1985(3).[4] To state a § 1985(3) claim, she must prove she "was injured in her person or property" by: (1) two or more persons; (2) who were motivated by a race-based or other class-based invidiously discriminatory animus; that was (3) "'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (quoting *United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983)).

Plaintiff's claim fails since she cannot show that any actions by Defendant were motivated by a race-based or other class-based invidiously discriminatory animus that has been recognized by any court. Her claims also fail since she cannot show that any right was violated, certainly not one that is protected against private enforcement. Her claim fails and it should be dismissed with prejudice.

## A. Plaintiff Fails Section 1985's Requirement to Plead She Has Been Subjected to Class-Based Animus

The Supreme Court has held that § 1985(3) claims are limited to those claims where there is proof (or a factual allegation, at this stage) that the defendant had some "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The Court

---

[4] Since the parties are not diverse, if this Court dismisses Count I of this Complaint, it should also dismiss without prejudice the remaining claims. 42 U.S.C. § 1367(c)(3).

explained this element is a critical bulwark preventing the use of "§ 1985(3) as a general federal tort law." *Bray*, 506 U.S. at 268 (quoting *Griffin*, 403 U.S. at 102). The Court has yet to resolve the question of whether anything other than racial animus satisfies § 1985(3). *Id.* In the one case that has come before the Court since *Griffin* seeking to answer that question, the Court rejected the attempt to extend the "class" to individuals opposed to abortion. *Id.* Courts, including the Tenth Circuit, have routinely refused to expand the statute's reach to non-race-based classes. *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176 (10th Cir. 1983).

The Tenth Circuit, following the Supreme Court's guidance, has explained that § 1985(3) cannot be extended beyond what Congress intended. *Id.* Congress intended this statute to aid efforts "combatting the violent and other efforts of the Klan and its allies to resist and to frustrate the intended effects of the Thirteenth, Fourteenth, and Fifteenth Amendments." *Id.* The Tenth Circuit refused to expand § 1985(3)'s reach:

> [W]e find nothing therein to give any encouragement whatever to extend § 1985 to classes other than those involved in the strife in the South in 1871 with which Congress was then concerned. In fact from *Scott* we get a signal that the classes covered by § 1985 should not be extended beyond those already expressly provided by the Court.

*Id.*

The Tenth Circuit rejected the plaintiff's attempt to define the "class-based animus" to include discrimination against handicapped individuals. *Id.* at 1177.

> We are concerned with a statute enacted for a particular purpose and to meet particular conditions. . . . However, the classes or groups to be protected are instead to be derived from statutory construction. This in our view the Supreme Court has done in *Scott* and *Griffin*. . . . Thus after referring to *Griffin* and noting that the Court there withheld judgment as to whether § 1985(3) "went any farther than its central concern— combatting the violent and other efforts of the Klan and its allies to resist

and to frustrate the intended affects of the Thirteenth, Fourteenth, and Fifteenth Amendments. Lacking other evidence of congressional intention, we follow the same course here." Thus the Court also withheld judgment, but the significant part of the statement is that the refusal to go farther was placed on the reason—lacking other evidence of congressional intention. This came after the examinations of such history-evidence in *Griffin* and *Scott*, as well as prior cases. We must conclude that a class of "handicapped persons" was not in the contemplation of Congress in 1871, and was not included as a class in what is now § 1985(3).

*Id.*

The question for this Court, then, is whether Plaintiff is a part of a class of persons that was "in the contemplate of Congress in 1871" as the Tenth Circuit has required. *Id.*; *see also Brown v. Reardon*, 770 F.2d 896, 905 (10th Cir. 1985). Plaintiff's claim under § 1985(3) fails to ever describe the "class" she purports to be a part of. *See* Doc. 13, ¶¶ 199—208. She pays lip service to this requirement by pleading there was "class-based invidious discriminatory animus." *See* Doc. 13, ¶¶ 206. Not only can this bare legal conclusion be ignored, but she fails to even suggest what this "class" might be. Reading between the lines, it seems Plaintiff suggests the class is "LGBTQ+ community and their allies," although such is far from clear. *See* Doc. 13, ¶¶ 205. Nor has Plaintiff made any effort to show that Congress intended to extend § 1985(3) in such a manner. *Wilhelm*, 720 F.2d at 1176. And this Court would be the *first* to recognize such a class. No court, to the best of undersigned counsel's research, has ever held that § 1985(3) recognizes "LGTBQ individuals" or "LGTBQ allies" as a class that can be subject to "class-based animus" as required by § 1985(3).

As a factual matter, Plaintiff's complaint is her own undoing. Plaintiff fails to cite any statement by any Defendant that belittles or expresses ill will toward any member of the LGTBQ community. Just the opposite is true. Plaintiff alleged that Mrs. Bennett

told the County Commission that she and her family—"we love everyone"—including the LGTBQ community, belying the claim of invidious discrimination. *See* Doc. 13, ¶ 54.

Plaintiff has failed to plead there was a "class-based animus" at the center of Defendants' actions. As a result, her § 1985(3) claim fails as a matter of law.

### B. Plaintiff Fails to Identify Any Right that is Protected Against Private Conspiracies

As explained above, § 1985(3) was not intended to federalize tort law. Notwithstanding that Plaintiff has failed to plead (and cannot prove) any class-based animus, Plaintiff has not pleaded any right was violated that is protected against private enforcement. Plaintiff claims that her "constitutional rights" have been violated, without identifying which, if any, were violated. *See* Doc. 13, ¶ 201. Plaintiff uses the phrase "in violation of the rights" but each time fails to allege what "right" is being violated. *See* Doc. 13, ¶¶ 200, 230—34, 205, 207. She pays lip service to this requirement ("rights that are by definition are protected against private . . . enforcement") but provides no specificity as to which right has been violated. *See* Doc. 13, ¶ 207. At best, her complaint could be read to extend to the "right" to "equal protection or equal privileges and immunities" as set forth in the Constitution.

Plaintiff must be alluding to a Fourteenth Amendment Equal Protection claim. The problem with such a claim is the text of the Fourteenth Amendment itself:

> No **State** shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any **State** deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV (emphasis added).

11

The key phrase in the text of the Fourteenth Amendment is "[n]o State" shall perform any of the prohibited acts. "[T]he principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948); see also *Tilton v. Richardson*, 6 F.3d 683, 687 (10th Cir. 1993) (holding that the plaintiff's "Fifth and Fourteenth Amendment claims likewise fail as these Amendments do not erect a shield against merely private conduct however discriminating or wrongful.") (citations omitted); see also *Downie v. Powers*, 193 F.2d 760, 765 (10th Cir. 1951) (same); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446 (10th Cir. 1995) (same). There can be no dispute, a claim arising out of the Fourteenth Amendment's right to "equal protection" or "equal rights" can only be brought against a State or state actor.[5]

Plaintiff has failed to state a claim under § 1985(3) and Count I should be dismissed with prejudice.

## II.    PLAINTIFF FAILS TO STATE A CLAIM FOR CIVIL CONSPIRACY

Plaintiff's civil conspiracy claim fails for much the same reason as her claim in Count I. To establish a claim for civil conspiracy, a plaintiff must plead facts showing: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the

---

[5] The Supreme Court has only recognized two rights that are protected against private action under § 1985(3): the right to be free from involuntary servitude and the right of interstate travel in the context of the Thirteenth Amendment. *Bray*, 506 U.S. at 278. Plaintiff does not allege either of these claims.

proximate result. *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1146 (10th Cir. 2016). Critically, a plaintiff must allege an unlawful act (e.g., a tort) was committed. *Savant Homes, Inc.*, 809 F.3d 1133; see also *White v. Shane Edeburn Const., LLC*, 2012 WY 118, ¶ 30 (Wyo. 2012) (holding that "a plaintiff cannot claim civil conspiracy . . . without an underlying cause of action in tort.").[6]

Plaintiff does not allege any unlawful act occurred. Plaintiff merely states, that "[o]ne or more unlawful acts were performed to accomplish the goal or one or more acts were performed to accomplish the unlawful goal." *See* Doc. 13, ¶ 213. Plaintiff never alleges any facts to support that bare legal conclusion, which this Court should not accept as true. *Ashcroft*, 556 U.S. 662. At best, Plaintiff alleges the alleged unlawful act of the civil conspiracy was "to deny the LGBTQ community the equal privileges and immunities of citizenship, and the use, benefits and privileges of property and/or contractual relationships." *See* Doc. 13, ¶ 211. Again, these claims are apparently based on the Fourteenth Amendment, which is not applicable to non-State actors. *Shelley*, 334 U.S. at 13; *Tilton*, 6 F.3d at 687. Plaintiff fails to plead a claim for civil conspiracy and Count II should be dismissed with prejudice.

## III. PLAINTIFF'S CLAIMS FOR DEFAMATION BASED ON DEFENDANTS' REPORTING OF A POTENTIAL CRIME FAIL AS A MATTER OF LAW

Plaintiff alleges a claim for defamation against Defendants, Hugh and Susan Bennett, based on their "fil[ing] a criminal complaint against the Plaintiff, stating, among other things that the Plaintiff is guilty of criminal offense and sexual

---

[6] Because the remainder of Plaintiff's claim arise under state law, this Court applies Wyoming substantive law since, in resolving state law claims, "federal courts are to apply state substantive law and federal procedural law." *Huff v. Shumate*, 360 F. Supp. 2d 1197, 1200 (D. Wyo. 2004) (citations omitted).

misconduct." *See* Doc. 13, ¶ 216. Plaintiff's claims are time-barred. Moreover, Plaintiff has not <mark>plead</mark>ed the actual malice requirement to impose defamation liability on an individual for statements made about a public official.

### A. Plaintiff's Claims are Time-Barred

Wyoming has a one-year statute of limitations for defamation. Wyo. Stat. § 1-3-105(a)(v)(A); *Cantu v. Flextronics Am., LLC*, 2:12-CV-00279-ABJ, 2014 WL 12768318, at *2 (D. Wyo. Aug. 21, 2014) (dismissing a defamation claim filed after the expiration of the one-year statute of limitation). Plaintiff had one year to file her Complaint from when Defendants allegedly spoke to the Campbell County Sheriff's Office on September 29, 2021. *See* Doc. 13, ¶ 122. Thus, Plaintiff would have needed to file her defamation claim before September 29, 2022. It is indisputable that Plaintiff did not file a claim on that basis within that time allotted. Her initial Complaint in this action was filed on September 27, 2023. *See* Doc. 1. Plaintiff's claim must be dismissed with prejudice.

### B. Plaintiff Fails to Plead Defendants Acted with Actual Malice

Even on the merits, Plaintiff's claim fails. She is undisputedly a public figure since her role was one of "such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees." *Hill v. Stubson*, 2018 WY 70, ¶ 17 (Wyo. 2018) (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966)). As such, to bring a claim for defamation, she must comply with the First Amendment's actual malice requirement set forth in *New York Times v. Sullivan* (e.g. that Defendants knew the statement was false). *Id.*

The crux of Plaintiff's claim is that Defendants, Hugh and Susan Bennett, filed a criminal complaint against her. As with the other counts, Plaintiff pays lip service to the legal requirements but fails to prove any *facts* to support her claims. *See* Doc. 13, ¶ 219 (pleading the verbatim language of the actual malice requirement, without any factual allegations showing it was met). Plaintiff's Complaint, read as a whole, easily disproves Plaintiff's claims that Defendants filed a criminal complaint alleging Plaintiff was "disseminating obscene material to children," a criminal violation, with actual knowledge that criminal activity did not occur. *See* Doc. 13, ¶ 122. Rather than showing the Sheriff's office dismissed the complaint out of hand as being without any legitimate basis, Plaintiff alleges that the Sheriff's office was unsure of the legal basis for the claim and sought advice from the County Attorney. *See* Doc. 13, 136—38. And it was not an easy analysis even for the County Attorney assigned to this matter. Plaintiff alleges the County Attorney had to "devote[] considerable time to research the criminal statutes and attendant case law" to make the charging decision in this case. *See* Doc. 13, ¶ 138.

Plaintiff cannot meet her burden to show Defendants acted with actual malice since she pleaded that even the Sheriff and County Attorney had to undertake significant legal analysis to determine whether crimes were committed. Certainly, if the legal experts were not sure whether a crime was committed, untrained lay individuals cannot be held civilly liable for defamation since Plaintiff's own allegations show there was a complete absence of actual malice.

Plaintiff's claim is time-barred and fails as a matter of law. This Court should dismiss Count III with prejudice.

## IV.   PLAINTIFF'S REMAINING DEFAMATION CLAIMS ARE TIME-BARRED AND DO NOT SURVIVE CONSTITUTIONAL SCRUTINY

Like Count III, Plaintiff alleges a claim for defamation against all Defendants based on their purportedly stating "Plaintiff had committed crimes" and "accus[ed] the Plaintiff of 'child abuse,' 'pornography,' and 'felonious conduct.'" *See* Doc. 13, ¶ 224—26. Plaintiff's claims are time-barred. And Plaintiff has not pled facts to satisfy the actual malice requirement to impose defamation liability.

### A.  Plaintiff's Claims are Time-Barred

Wyoming has a one-year statute of limitations for defamation. § 1-3-105(a)(v)(A); *Cantu*, 2:12-CV-00279-ABJ, 2014 WL 12768318, at *2. Plaintiff had one year to file her Complaint from when Defendants allegedly made the defamatory statements. Plaintiff's most recent allegation about a statement by any Defendant is June 20, 2022. *See* Doc. 13, § 182. Thus, Plaintiff would have needed to file her claim before June 20, 2023. It is indisputable that Plaintiff did not file a claim within that time. Her initial Complaint in this action was filed on September 27, 2023. *See* Doc. 1. As such, Plaintiff's claim must be dismissed with prejudice.

### B.  Plaintiff's Claims are Defeated by Defendants' First Amendment Rights to Free Speech and Right to Petition

Defendants' challenged speech was almost exclusively them speaking to the County Commission, the Library Board, or Plaintiff herself. *See* Doc. 13, ¶¶ 52—55, 57, 80—83, 108—10, 119; 125—128, 141—46. Plaintiff identifies two other instances: (1) the so-called "publication"—a generous term for Hugh Bennett's self-published automotive advertising magazine (*See* Doc. 13, ¶ 87), and (2) the report to the Sheriff's office of potential illegal conduct (*See* Doc. 13, ¶¶ 121, 125). Plaintiff fails to point to any

defamatory statement in the magazine, and Plaintiff's claims about the report to the Sheriff fail. *See*, *supra*, Section III(B). Plaintiff is essentially taking issue with Defendants exercising their First Amendment rights to speak on matters of public concern and to petition their government to address their concerns. Should this Court permit this claim to proceed, it would have a substantial chilling effect as ordinary citizens would be fearful of speaking in public on important public issues lest they be hauled into federal court and face civil liability.

### 1. Statements at Issue in Count IV

Plaintiff claims Defendants defamed her by making statements "accus[ing] Plaintiff of [] crimes" and "accusing the Plaintiff of 'child abuse,' 'pornography,' and 'felonious conduct.'" *See* Doc. 13, ¶¶ 223, 226. That is the sum total of what has been pleaded against Defendants in Count IV as the statements at issue. As discussed above, Plaintiff has failed to show actual malice in the statement(s) made to law enforcement leaving only the claims regarding "child abuse" and "pornography." *See* Doc. 13, ¶ 226.

*First*, Plaintiff does not plead any fact showing Defendants accused Plaintiff of child abuse. The only place in the Complaint that references a statement including the words "child abuse" is when Plaintiff pleaded the statement made by Susan Bennett, but it actually does *not* accuse Plaintiff of committing child abuse. *See* Doc. 13, ¶ 128. Rather, Susan Bennett states that, in her opinion, the behavior of Plaintiff is "disrespect[ful] to children who have had child abuse" in their past and that "a child that's been a victim of child abuse can be very harmed" by the materials Plaintiff insisted be included in the library. *See* Doc. 13, ¶ 128. Of course, this was Plaintiff's opinion, and she was entitled to express that opinion. But in no way does Plaintiff plead

that Ms. Bennett accused Plaintiff of "child abuse." That is stretching the statement far beyond the plain meaning of the words used and is twisting the words out of context to create a defamatory statement.

*Second*, Plaintiff does not plead any fact showing Defendants accused Plaintiff of "pornography." The only place in the Complaint that references a statement including the word "pornography" is when Plaintiff pleaded that there was some un-pled statement made by Hugh Bennett that alleges certain books contained "pornography" and he strongly disagreed with the decision to allow these books to be placed in the children's section. *See* Doc. 13, ¶ 124. Plaintiff seemingly conflates Defendants' use of the word "pornography," something that is surely in the eye of the beholder, with the legal term "obscene" that describes illegal material. *Miller v. California*, 413 U.S. 15, 18, n.12 (1973) (explaining the difference between pornography and obscene material and noting that former is protected from government interference and the latter is not). In his concurrence, Justice Stewart provided us the oft-quoted line—"I know it when I see it"—explaining that it is impossible to precisely define the line between pornographic and legally obscene material. *Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).

Defendants pointed to explicit pictures, themes, and story lines that in their opinion rose to the level of pornography. Defendants rightfully presented the County Commission and Library Board with their opinion as to the materials being placed in the County Library and their moral disagreement with that choice (a choice shared by the County Commission). Just as great legal minds reviewed videos and had varying

opinions as to whether the material was pornographic, Defendants reviewed the materials being placed in the library and expressed their opinion that the material was pornographic. But in any event, it cannot be said that Defendants acted with *actual* knowledge that the material in question was not pornographic.

> 2. *Plaintiff's Claims Fail First Amendment—Free Speech and Petition Clause—Scrutiny*

As a public official, Plaintiff's claims are governed by *NYT v. Sullivan*'s heightened standard for public figure plaintiffs. *Dworkin v. L.F.P., Inc.*, 839 P.2d 903, 912 (Wyo. 1992). The First Amendment places a constitutional limitation on the application of state law defamation claims "prohibit[ing] a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). In order to prove her claim, Plaintiff must "prove[] with *convincing clarity* that the statement was made with actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Dworkin*, 839 P.2d at 912 (emphasis added).

The entire purpose of the First Amendment is to provide ample freedom to debate important issues of public concern. *Arkansas Educ. Television Com'n v. Forbes*, 523 U.S. 666, 681 (1998). "[The Supreme] Court has emphasized that the First Amendment 'embraces at the least the liberty to discuss publicly . . . all matters of public concern." *Consol. Edison Co. of New York, Inc. v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 534 (1980) (internal quotations omitted). It has stated repeatedly "that expression on

public issues 'has always rested on the highest rung of the hierarchy of First Amendment values," and that speech on matters "of public concern" is "entitled to special protection." *N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) (citing *Carey v. Brown*, 447 U.S. 455, 467 (1980)); see also *Connick v. Myers*, 461 U.S. 138, 145 (1983) (same).

Defendants' actions are also protected by the First Amendment right to petition. The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances," granting people not only the freedom to stand up and speak out against perceived injustices, but also protects their right to take action to change things taking place in their government of which they disapprove. U.S. Const. amend. I. "It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances." *Thomas v. Collins*, 323 U.S. 516, 530 (1945); *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). Because the Petition Clause was inspired by the same ideals that resulted in the First Amendment freedoms to speak, publish, and assemble, it has been stated that there is no basis for granting greater constitutional protection to statements made in a petition than other First Amendment expressions, or vice versa. *McDonald v. Smith*, 472 U.S. 479 (1985). Accordingly, the right to petition is no more or less sacred than the right to free speech, and as there may be an abuse of the right of free speech, so may there be an abuse of the right to petition. *Schalk v. Gallemore*, 906 F.2d 491, 498 (10th Cir. 1990). Although the right to free speech and the right to petition are separate guarantees, they are

related and generally subject to the same constitutional analysis. *Wayte v. United States*, 470 U.S. 598, 610 (1985).

Plaintiff was on the losing side of a hotly-contested debate in the community about the appropriate type of books that should be made available to children in public libraries. Plaintiff now swings for the fences claiming Defendants are liable for damages because they showed up at County Commission meetings and Library Board meetings and advocated for their worldview. Plaintiff should not be permitted to bring a claim against Defendants with the goal of stopping them from expressing their opinions and punishing them for petitioning their government to take actions they believe are necessary and are aligned with their worldview.

Plaintiff's claims are time-barred. And even if they were timely, they fail to satisfy the actual malice standard required of a public figure. Defendants did not accuse Plaintiff of a crime with actual knowledge a crime had not occurred. Defendants did not accuse Plaintiff *at all* of committing child abuse. And Defendants' legally-protected opinion about materials that in their view are pornographic is not actionable. Plaintiff's claim fails and it should be dismissed with prejudice.

## V.   PLAINTIFF DID NOT PLEAD AN INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

For a plaintiff to plead a claim for intentional infliction of emotional distress, she must allege (1) the defendant intentionally or recklessly; (2) participated in extreme and outrageous conduct; (3) which caused the plaintiff; (4) severe emotional distress. *Hoblyn v. Johnson*, 2002 WY 152, ¶ 39 (Wyo. 2002). Critical here, Plaintiff must plead facts showing there was "extreme and outrageous conduct" and that she suffered "severe

emotional distress." "Extreme and outrageous conduct" is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Larsen v. Banner Health Sys.*, 2003 WY 167 (Wyo. 2003). Severe emotional distress is distress which is so severe that "no reasonable man could be expected to endure it." *Leithead v. Am. Colloid Co.*, 721 P.2d 1059, 1066 (Wyo. 1986); *Cook v. Shoshone First Bank*, 2006 WY 13 (Wyo. 2006). As a public figure, basing her claim on statements made by Defendants (*see* Doc. 13, ¶ 229), she must also meet the actual malice standard for this claim. *Spence v. Flynt*, 816 P.2d 771, 774 (Wyo. 1991) (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988)). This Court has a gatekeeping function and must not permit claims to proceed where the plaintiff cannot state a claim and show both "extreme and outrageous conduct" and "severe emotional distress." *Hatch v. State Farm Fire & Cas. Co.*, 930 P.2d 382, 396 (Wyo. 1997); *Hoblyn*, 2002 WY 152.

In *Hatch*, the Wyoming Supreme Court catalogued all the instances of conduct alleged that were "extreme and outrageous conduct" by defendant. *Hatch*, 930 P.2d at 396. The defendant made the plaintiffs fill out lengthy, seemingly unnecessary paperwork to substantiate the claim for fire damage to their home and required it in such a time frame that the plaintiffs had to "take sick leave, vacation, weekends, and evenings to complete it." *Id.* The defendant sent people to the plaintiffs' home without permission and without notice. *Id.* The defendant threatened to cancel their insurance policy, conducted an interview under oath with an attorney that was 'sarcastic,' 'aggressive,' and 'hostile.'" *Id.* The defendant also refused to give the plaintiffs

information they were entitled to about their claim, withheld information that was exculpatory, all while assisting the county attorney in attempting to prosecute one plaintiff for arson. *Id.* And, despite having a female investigator at the home, sent a male investigator to go through the wife's and daughter's drawers, personal things, and personal clothing. *Id.* All of this was simply not enough. *Id.* The court explained the conduct was certainly "insensitive or inappropriate" but it was not "so outrageous in character or extreme in degree to reach the level of being beyond all possible bounds of decency;" nor was it "atrocious and utterly intolerable in a civilized community." *Id.*

In *Hoblyn*, the Wyoming Supreme Court rejected the claim of "severe emotional distress" since "[t]here [wa]s no evidence of the impact of this alleged distress" on the plaintiff's life, which would include "missed work, inability to sleep or engage in hobbies and activities previously enjoyed, diminished ability to socialize or handle the necessary functions of everyday life, or memory loss." *Id.* At a minimum, those things must be pled for a plaintiff to state a claim, since she must later prove them in order to survive summary judgment.

Here, Plaintiff merely states a legal conclusion as to these elements without including any factual basis. *See* Doc. 13, ¶¶ 229—32. There are no factual allegations as to what allegedly constitutes the "extreme and outrageous conduct" in this case, or facts explaining the "severe emotional distress" Plaintiff has allegedly endured. This claim fails as a matter of law and must be dismissed with prejudice.

## VI.   PLAINTIFF'S ABUSE OF PROCESS CLAIM FAILS SINCE THERE WAS NO PROCESS ISSUED AGAINST HER

The sole basis for Plaintiff's abuse of process claim is Defendants' speaking with the Sheriff about potential criminal liability and Plaintiff's allegation a "criminal complaint" was filed.  *See* Doc. 13, ¶ 125. Notably, Plaintiff does not provide this complaint or any case number where a criminal case was *actually* initiated. Nor does she plead any facts showing that she suffered any damage as the result of the inquiry with the Sheriff's office. Plaintiff's claim is time-barred and is legally insufficient.

### A.  Plaintiff's Claim is Time-Barred.

Wyoming has a one-year statute of limitations for malicious prosecution, which is the analogous claim to abuse of process. § 1-3-105(a)(v)(C); Plaintiff had one-year to file her Complaint from when Defendants allegedly spoke to the Campbell County Sheriff's Office on September 29, 2021. *See* Doc. 13, ¶ 122. Thus, Plaintiff would have needed to file her claim before September 29, 2022. It is indisputable that Plaintiff did not file a claim on that basis within that time allotted. Her initial Complaint in this action was filed on September 27, 2023. *See* Doc. 1. As such, Plaintiff's claim must be dismissed with prejudice.

### B.  Plaintiff Has Not (and Cannot) Plead an Abuse of Process Since No Process was Issued

In order for Plaintiff to plead a claim for abuse of process, she must allege "(1) an ulterior purpose; and (2) a willful act in the use of the process which is not proper *in the regular conduct of the legal proceeding*." *The Tavern, LLC v. Town of Alpine*, 2017 WY 56 (Wyo. 2017) (emphasis added). "The gist of the action for abuse of process lies in the improper use of process *after it is issued*." *Dean v. Kochendorfer*, 237 N.Y. 384 (1924)

(emphasis added); see also *Advantor Capital Corp. v. Yeary*, 136 F.3d 1259 (10th Cir. 1998). Plaintiff must allege that there was some misconduct within an *ongoing* proceeding to state a claim for abuse of process. It is not enough to allege that a case was brought with ill intent, there must be an "affirmative act" by the defendant "involved in the use of the process which is not proper to the regular prosecution of the proceedings is necessary for this tort to exist." *Bosler v. Shuck*, 714 P.2d 1231, 1235 (Wyo. 1986). In other words, there must be an affirmative act within an ongoing case, not the initial filing of a case without probable cause.

Plaintiff alleges that Defendants filed a criminal complaint, but nothing more. *See* Doc. 13, ¶ 235. It is undisputed no process actually occurred. No case was ever initiated. Plaintiff only alleges that Defendants filed a criminal complaint, but does not plead that she was arrested, that charges were filed, or that anything further happened. Not only does this show no process was ever issued (e.g. there can be no abuse of non-existent process), but also that Plaintiff suffered no damage since she never incurred any damages based on a criminal complaint that never was accepted or turned into actual charges. This claim must also be dismissed with prejudice.

## CONCLUSION

At its heart, Plaintiff's Complaint takes issue with the public advocacy performed by Defendants (successfully). That is not a basis for civil liability under § 1985(3), common law civil conspiracy, common law defamation, intentional infliction of emotional distress, or abuse of process. This Court should dismiss Plaintiff's Amended Complaint with prejudice.

DATED:  January 8, 2024

Respectfully submitted,

*/s/ Jeremy D. Bailie*
Jeremy D. Bailie (*Pro Hac Vice*)
Florida Bar No. 118558
**Weber, Crabb & Wein, P.A.**
5453 Central Avenue
St. Petersburg, Florida 33710
Telephone: (727) 828-9919
Facsimile: (727) 828-9924
Primary: Jeremy.Bailie@webercrabb.com
Secondary: honey.rechtin@webercrabb.com

D. Stephen Melchior, Esquire
**Melchior Law Firm, PC**
Wyoming Bar No.: 5-2885
Phone: (307) 637-2323
Fax: (307) 637-2313
Email: steve@melchlaw.com
2010 Warren Avenue
Cheyenne, WY 82001
Local Counsel

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 8, 2024, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF portal, which will serve all counsel of record:

Qusair Mohamedbhai
Iris Halpern (Pro Hac Vice)
Azra Taslimi (Pro Hac Vice)
RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street
Denver, CO 80205
qm@rmlawyers.com
ih@rmlawyers.com
at@rmlawyers.com
*Attorneys for Plaintiff*

*/s/ Jeremy D. Bailie*
Attorney

27