Jeremy D. Bailie (*Pro Hac Vice*)
Florida Bar No. 118558
**WEBER, CRABB & WEIN, P.A.**
Telephone: (727) 828-9919
Facsimile: (727) 828-9924
Jeremy.Bailie@webercrabb.com
5453 Central Avenue
St. Petersburg, FL 33710

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| TERRI LESLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-00177-ABJ |
| | ) | |
| HUGH BENNETT, SUSAN BENNETT, | ) | |
| AND KEVIN BENNETT, | ) | |
| | ) | |
| Defendants, | ) | |

---

## DEFENDANTS' ANSWER TO PLAINTIFF'S
## SECOND AMENDED COMPLAINT

---

Defendants, Hugh Bennett, Susan Bennett, and Kevin Bennett, by and through undersigned counsel, hereby files this Answer to the Second Amended Complaint filed by Plaintiff, Terri Lesley, and state as follows:

### INTRODUCTION[1]

Defendants, to the extent necessary, deny the allegations in this unnumbered "introductory" section.

---

[1] Defendants deny the allegations in Plaintiff's Footnote 1.

## JURISDICTION, VENUE, AND PARTIES[2]

1.    Admit this Court has jurisdiction over Plaintiff's § 1985 claim. Denied that Plaintiff has standing to bring a § 1985 claim or that Plaintiff is entitled to attorney's fees under § 1988.

2.    Admit that this Court may exercise supplemental jurisdiction over Plaintiff's state law claim.

3.    Admit that venue is proper in this Court.

4.    Admit.

5.    Admit.

6.    Admit.

7.    Admit that Defendant, Kevin Bennett, was a resident of the State of Wyoming.

## FACTUAL ALLEGATIONS

8.    Without knowledge, therefore denied.

9.    Without knowledge, therefore denied.

10.    Without knowledge, therefore denied.

11.    Without knowledge, therefore denied.

12.    Without knowledge, therefore denied.

13.    Without knowledge, therefore denied.

---

[2] Defendants deny the allegations in Plaintiff's Footnote 2.

14.    Without knowledge, therefore denied.

15.    Without knowledge, therefore denied.

16.    Without knowledge, therefore denied.

17.    Without knowledge, therefore denied.

18.    Without knowledge, therefore denied.

19.    Without knowledge, therefore denied.

20.    Admit.

21.    Admit.

22.    Admit.

23.    Admit that Del Shelstad, Colleen Faber, Robert Maul, Rusty Bell, and Daniel G. "D.G." Reardon were at some point members of the Campbell County Board of Commissioners. Denied as to Plaintiff's allegation "at that time" since the Complaint fails to explain what point in time Plaintiff is referring to.

24.    Admit.

25.    Admit that Charlie Anderson, Dr. Hollie Stewart, Miranda Miller-Finn, Nancy Stoval, and Mandy Steward at some point in time were members of the Campbell County Public Library System Board.

26.    Admit.

27.    The newspaper article cited speaks for itself. Denied that the statements in the article are actually true statements.[3] Otherwise, denied.

28.    Without knowledge, therefore denied.

29.    Without knowledge, therefore denied. Further, the newspaper article cited speaks for itself. [4] Denied that the statements in the article are actually true statements.[5]

30.    Without knowledge, therefore denied. Further, the newspaper article cited speaks for itself. [6] Denied that the statements in the article are actually true statements.[7]

31.    Denied.

32.    Without knowledge, therefore denied.

33.    Without knowledge, therefore denied.

34.    Without knowledge, therefore denied.

35.    Without knowledge, therefore denied.

36.    Without knowledge, therefore denied.

37.    Without knowledge, therefore denied.

38.    Without knowledge, therefore denied.

---

[3] Defendants deny the allegations in Plaintiff's Footnote 3.
[4] Defendants deny the allegations in Plaintiff's Footnote 4.
[5] Defendants deny the allegations in Plaintiff's Footnote 5.
[6] Defendants deny the allegations in Plaintiff's Footnote 6.
[7] Defendants deny the allegations in Plaintiff's Footnote 7.

39.    Without knowledge, therefore denied.

40.    Denied.

41.    Without knowledge, therefore denied.

42.    Without knowledge, therefore denied.

43.    Without knowledge, therefore denied.

44.    Without knowledge, therefore denied.

45.    Without knowledge, therefore denied.

46.    Without knowledge, therefore denied.

47.    Without knowledge, therefore denied.

48.    Without knowledge, therefore denied.

49.    Denied.

50.    Denied.

51.    Admit that Defendants disagreed with the public recognition of a purported "pride month" but otherwise denied. Further, Defendants specifically deny that Defendants acted in concert with any commissioner.[8]

52.    Denied.

53.    Denied. Defendants specifically deny any allegation of "collusion" and specifically deny any discriminatory sentiment towards any individual or

---

[8] Defendants deny the allegations in Plaintiff's Footnote 8.

group. Defendants admit their motive in speaking out was to protect children in the community.

54.    Admit that the statement is selectively quoted. The full statement speaks for itself.  Otherwise, denied.

55.    Admit that the statement is selectively quoted. The full statement speaks for itself.[9] Otherwise, denied.

56.    Admit that the statement is selectively quoted. The full statement speaks for itself.[10] Otherwise, denied.

57.    Admit that Defendants exercised their First Amendment rights asking the Commissioners to require the Library to reconsider placing certain books in the children's section that were not age appropriate.

58.    Admit.

59.    Without knowledge, therefore denied as to this entire paragraph and each subpart. Specifically, Defendants deny any cooperation, collusion, or knowledge of/with other third-parties actions involving this issue.

60.    Without knowledge, therefore denied.

61.    Without knowledge, therefore denied.

62.    Without knowledge, therefore denied.

63.    Without knowledge, therefore denied.

---

[9] Defendants deny the allegations in Plaintiff's Footnote 9.
[10] Defendants deny the allegations in Plaintiff's Footnote 10.

64.     Without knowledge, therefore denied.

65.     Without knowledge, therefore denied.

66.     Without knowledge, therefore denied.

67.     Without knowledge, therefore denied.

68.     Without knowledge, therefore denied.

69.     Without knowledge, therefore denied.

70.     Defendants admit they shared with their friends and neighbors their concerns about the transgender magic show. Denied that they "spurred" anything in the community. Otherwise, without knowledge, therefore denied.

71.     Denied.

72.     Without knowledge, therefore denied.

73.     Without knowledge, therefore denied.

74.     Without knowledge, therefore denied.

75.     Without knowledge, therefore denied.

76.     Without knowledge, therefore denied.

77.     Without knowledge, therefore denied.

78.     Without knowledge, therefore denied.

79.     Without knowledge, therefore denied.

80.     Without knowledge, therefore denied. Further, Defendants specifically deny attending or participating in the alleged demonstration at the library.

81.    Without knowledge, therefore denied. Further, Defendants deny "agitating" or engaging in any behavior other than lawful First Amendment protected expressive activity.

82.    Denied. Defendants specifically deny the allegation that they "held themselves as speaking for the group" or speaking on behalf of anyone other than themselves.

83.    Admit that the statement is selectively quoted. The full statement speaks for itself. Otherwise, denied.

84.    Admit that the statement is selectively quoted. The full statement speaks for itself. Otherwise, denied.

85.    Admit that the statement is selectively quoted. The full statement speaks for itself. Otherwise, denied.

86.    Without knowledge, therefore denied.

87.    Without knowledge, therefore denied.

88.    Without knowledge, therefore denied.[11]

89.    Admit that Defendant, Hugh Bennett, published an article in the magazine *Anybody's Autos*, in which Defendant, Hugh Bennett, exercised his First Amendment rights to comment about things occurring in the community. Otherwise, denied.

---

[11] Defendants deny the allegations in Plaintiff's Footnote 11.

90.     Admit that Defendant, Hugh Bennett, published an article in the magazine *Anybody's Autos*, in which Defendant, Hugh Bennett, exercised his First Amendment rights to comment about things occurring in the community. Otherwise, denied.

91.     Admit that Defendant, Hugh Bennett, published an article in the magazine *Anybody's Autos*, in which Defendant, Hugh Bennett, exercised his First Amendment rights to comment about things occurring in the community. Otherwise, denied.

92.     Admit that Defendant, Hugh Bennett, published an article in the magazine *Anybody's Autos*, in which Defendant, Hugh Bennett, exercised his First Amendment rights to comment about things occurring in the community. Otherwise, denied.

93.     Admit that Defendant, Hugh Bennett, published an article in the magazine *Anybody's Autos*, in which Defendant, Hugh Bennett, exercised his First Amendment rights to comment about things occurring in the community. Otherwise, denied.

94.     Without knowledge, therefore denied.

95.     Without knowledge, therefore denied.

96.     Without knowledge, therefore denied.

97.     Denied that Defendant, Kevin Bennett, was the "founder" of the MassResistance Wyoming chapter. Admit that Kevin Bennett was at a booth

at the County Fair in August 2021 discussing MassResistance. Admit that some time after the August 2021 county fair, Defendant, Kevin Bennett, exercised his First Amendment rights urging local community members to petition their local government officials, but denied that any such petition sought to "ban books" or "estrange[e]" any member of the community. Otherwise, denied.

98.    Admit that months after the county fair, Defendant, Kevin Bennett, exercised his First Amendment rights urging local community members to petition their local government officials, but denied that any such petition sought to "ban books" or "estrange[e]" any member of the community. Otherwise, denied.

99.    Admit that Defendants, along with others in the community, participated in renting space on billboards to exercise their First Amendment rights.

100.    Admit that Defendant, Hugh Bennett, published an article in the magazine *Anybody's Autos*, in which Defendant exercised his First Amendment rights to comment about things occurring in the community. Otherwise, denied.

101.    Admit that Defendant, Hugh Bennett, published an article in the magazine *Anybody's Autos*, in which Defendant exercised his First Amendment rights to comment about things occurring in the community.

Further, Defendants specifically deny any allegation that they had "followers" or that they "bragged" about any activity. Otherwise, denied.

102.    Denied.

103.    Denied that Defendants "mobilized" or "trained" and community residents. Admit that Defendants exercised their First Amendment rights to criticize a public official at a public meeting. Otherwise, denied.

104.    Without knowledge, therefore denied.

105.    Without knowledge, therefore denied.

106.    Without knowledge, therefore denied.

107.    Without knowledge, therefore denied, including each subpart.

108.    Without knowledge, therefore denied.

109.    Without knowledge, therefore denied.

110.    Denied that Defendants had "followers" and further denied that Defendants took any action other than exercising their First Amendment rights to criticize a public official at the appropriate time and place and in an appropriate manner.

111.    Denied that Defendants had "followers" and further denied that Defendants took any action other than exercising their First Amendment rights to criticize a public official at the appropriate time and place and in an appropriate manner.

112.    Admit.

113.   Admit that the statement is selectively quoted. The full statement speaks for itself. Otherwise, denied.

114.   Admit that the statement is selectively quoted. The full statement speaks for itself. Otherwise, denied.

115.   Without knowledge, therefore denied.

116.   Without knowledge, therefore denied. Specifically, Defendants deny there were "censorship advocates" or that Defendants were a part of any such group.

117.   Without knowledge, therefore denied.

118.   Admit that Defendants submitted requests for reconsideration asking the Library to reconsider placing books in the children's section that were not age appropriate. Otherwise, without knowledge and therefore denied.

119.   Without knowledge, therefore denied.

120.   Admit that among other books, Defendant, Kevin Bennett, exercised his First Amendment rights asking the Library to reconsider placing these books in the children's section that were not age appropriate. Otherwise, denied.

121.   Admit that the statement is selectively quoted. The full statement speaks for itself. Otherwise, denied.

122.   Without knowledge, therefore denied.

123. Admit that Defendants exercised their First Amendment rights to criticize a public official at the appropriate time and place and in an appropriate manner. Otherwise, denied.

> a. Admit that the statement is selectively quoted. The full statement speaks for itself. Otherwise, denied.

> b. Denied.

> c. Admit that the statement is selectively quoted. The full statement speaks for itself. Otherwise, denied.

> d. Admit that the statement is selectively quoted. The full statement speaks for itself. Otherwise, denied.

124. Denied. Further, Defendants specifically deny any allegation of coercion or "working together" and further specifically deny any allegation of "harassment" or "initimidat[ion]" of Plaintiff.

125. Denied.

126. Admit that Defendant, Hugh Bennett, published an article in the magazine *Anybody's Autos*, in which Defendant exercised his First Amendment rights to comment about things occurring in the community. Admit that the statement purports to selectively quote the article. The full statement speaks for itself. Otherwise, denied.

127. Admit that Defendants, Hugh and Susan Bennett, spoke to the Campbell County Sheriff's Office regarding the inappropriate books being

placed in the children's section. Denied that Defendants "formally accused" Plaintiff of any crime. Otherwise, denied.

128.   Admit that Defendants, Hugh and Susan Bennett, spoke to the Campbell County Sheriff's Office regarding the inappropriate books being placed in the children's section. Otherwise, denied.

129.   Admit that Defendants, Hugh and Susan Bennett, spoke to the Campbell County Sheriff's Office regarding the inappropriate books being placed in the children's section. Otherwise, denied.

130.   Admit that Defendants, Hugh and Susan Bennett, spoke to the Campbell County Sheriff's Office regarding the inappropriate books being placed in the children's section. Denied that Defendants "formally accused" Plaintiff of any crime or filed a criminal complaint against her. Otherwise, denied.

131.   Admit that Defendants, Hugh and Susan Bennett, spoke to the Campbell County Sheriff's Office regarding the inappropriate books being placed in the children's section. Denied that Defendants "called for the arrest" of Plaintiff. Otherwise, denied.

132.   Admit that Defendants, Hugh and Susan Bennett, spoke to the Campbell County Sheriff's Office regarding the inappropriate books being placed in the children's section. Denied that Defendants "intended to compel"

Plaintiff to take any action. Admit that the statement is selectively quoted. The full statement speaks for itself. Otherwise, denied.

133.   Admit that the statement is selectively quoted. The full statement speaks for itself. Otherwise, denied.

134.   Admit that W.S. § 6-2-402(a)(ii) speaks for itself. Otherwise, denied.

135.   Admit that W.S. § 6-2-402(b) speaks for itself. Otherwise, denied.

136.   Admit that Defendants, Hugh and Susan Bennett, exercised their First Amendment rights to criticize a public official at the appropriate time and place and in an appropriate manner. Further, Defendants deny any allegation that they "accused Ms. Lesley of having committed crimes" nor did they take any action as purported retaliation. Otherwise, denied.

137.   Admit.

138.   Denied.

139.   Admit that an unknown individual created a sign and gave it to Defendant, Kevin Bennett, upon his arrival at the meeting.[12]

140.   Admit that an unknown individual created a sign and gave it to Defendant, Kevin Bennett, upon his arrival at the meeting. It is pictured on the floor next to the chair.

---

[12] Defendants deny the allegations in Plaintiff's Footnote 12.

141.   Without knowledge, therefore denied. Further, Defendants deny that any charges were filed by Defendants against Plaintiff.

142.   Admit that the Campbell County Attorney sent a letter to the Campbell County Sheriff declining to pursue any criminal charges. Otherwise, denied.

143.   Admit that the Campbell County Attorney sent a letter to the Campbell County Sheriff declining to pursue any criminal charges. Otherwise, denied.

144.   Admit that the Campbell County Attorney sent a letter to the Campbell County Sheriff declining to pursue any criminal charges. Otherwise, denied.

145.   Admit that the Campbell County Attorney sent a letter to the Campbell County Sheriff declining to pursue any criminal charges. Otherwise, denied.

146.   Denied.

147.   Without knowledge as to Plaintiff's purported worry, distress, losing sleep, anxiety, and stress, therefore denied. Further, Defendants deny they had any "followers" and further deny that they engaged in any "harassment" of Plaintiff.

148.   Admit Defendant, Hugh Bennett, exercised his First Amendment rights to object to the legal analysis of the Campbell County Attorney and voice

that opposition publicly in the appropriate manner. Further such statement in its entirety speaks for itself. Otherwise, denied.[13]

149. Denied.

150. Denied.

151. Admit that Defendant, Kevin Bennett, exercised his First Amendment rights to object to the legal analysis of the Campbell County Attorney and voice that opposition publicly in the appropriate manner. Further such statement in its entirety speaks for itself. Otherwise, denied.

152. Denied.

153. Denied.

154. Denied, including as to all subparts.

155. Admit that Defendants exercised their First Amendment rights to criticize a public official at the appropriate time and place and in an appropriate manner. Otherwise, denied.

156. Admit that Defendant, Hugh Bennett, exercised his First Amendment rights to criticize a public official at the appropriate time and place and in an appropriate manner. Otherwise, denied.

157. Without knowledge, therefore denied.

158. Without knowledge, therefore denied.

---

[13] Defendants deny the allegations in Plaintiff's Footnote 13.

159. Admit that Defendants exercised their First Amendment rights to criticize a public official at the appropriate time and place and in an appropriate manner. Otherwise, denied.

160. Without knowledge, therefore denied.

161. Without knowledge, therefore denied.

162. Denied.

163. Admit that Defendant, Susan Bennett, exercised her First Amendment rights to speak about a public matter at the appropriate time and place and in an appropriate manner. Otherwise, denied.[14]

164. Without knowledge, therefore denied.

165. Without knowledge, therefore denied.

166. Without knowledge, therefore denied.

167. Without knowledge, therefore denied.

168. Without knowledge, therefore denied.

169. Without knowledge, therefore denied.

170. Without knowledge, therefore denied.

171. Without knowledge, therefore denied.

172. Without knowledge, therefore denied.

173. Without knowledge, therefore denied.

---

[14] Defendants deny the allegations in Plaintiff's Footnote 14.

174.   Without knowledge, therefore denied.

175.   Denied.

176.   Denied.

177.   Without knowledge, therefore denied.

178.   Admit that Defendants exercised their First Amendment rights to speak about a public matter at the appropriate time and place and in an appropriate manner. Further, it is specifically denied that Defendants "colluded" with any individual or entity. Otherwise, denied.

179.   Admit that Defendant, Susan Bennett, exercised her First Amendment rights to speak about a public matter at the appropriate time and place and in an appropriate manner. Further, the statement selectively quoted by Plaintiff speaks for itself in its entirety. Otherwise, denied.

180.   Admit that Defendant, Hugh Bennett, exercised his First Amendment rights to speak about a public matter at the appropriate time and place and in an appropriate manner. Further, the statement selectively quoted by Plaintiff speaks for itself in its entirety. Otherwise, denied.

181.   Without knowledge, therefore denied.

182.   Admit that Defendant, Kevin Bennett, exercised his First Amendment rights to speak about a public matter at the appropriate time and place and in an appropriate manner. Further, the statement selectively quoted by Plaintiff speaks for itself in its entirety. Further, Defendant, Kevin Bennett,

specifically denies the allegation that any group of people is "his group." Otherwise, denied.

183. Without knowledge, therefore denied.

184. Without knowledge, therefore denied.

185. Admit that Defendant, Kevin Bennett, exercised his First Amendment rights to speak about a public matter at the appropriate time and place and in an appropriate manner. Otherwise, denied.

186. Admit that Defendant, Kevin Bennett, exercised his First Amendment rights to speak about a public matter at the appropriate time and place and in an appropriate manner. Further, the statement selectively quoted by Plaintiff speaks for itself in its entirety. Otherwise, denied.

187. Admit that Defendant, Kevin Bennett, exercised his First Amendment rights to speak about a public matter at the appropriate time and place and in an appropriate manner. Further, the statement selectively quoted by Plaintiff speaks for itself in its entirety. Otherwise, denied.

188. Admit that Defendant, Kevin Bennett, exercised his First Amendment rights to speak about a public matter at the appropriate time and place and in an appropriate manner. Further, the statement selectively quoted by Plaintiff speaks for itself in its entirety. Otherwise, denied.[15]

---

[15] Defendants deny the allegations in Plaintiff's Footnote 15.

189.   Without knowledge, therefore denied.

190.   Admit that Defendant, Kevin Bennett, exercised his First Amendment rights to speak about a public matter at the appropriate time and place and in an appropriate manner. Further, the statement selectively quoted by Plaintiff speaks for itself in its entirety. Further denied that Kevin Bennett acted on behalf or in concert with any other individual. Otherwise, denied.

191.   Admit.

192.   Admit.

193.   Admit.

194.   Admit that Ms. Bear, Mr. Butler, Ms. Collier, and Ms. Lyon likely held similar political and religious views as Defendants and the Campbell County Commissioners, but without knowledge as to the "beliefs" Plaintiff is referring to and whether those beliefs are aligned with any other individual or group and therefore denied. Further, Defendants specifically deny "me[eting]" or "plot[ting]" with any individual or entity. Otherwise, denied.

195.   Without knowledge, therefore denied.

196.   Without knowledge, therefore denied.

197.   Without knowledge, therefore denied.

198.   Without knowledge, therefore denied.

199.   Without knowledge, therefore denied.

200.   Without knowledge, therefore denied.

201.   Without knowledge, therefore denied.

202.   Without knowledge, therefore denied.

203.   Without knowledge, therefore denied.

204.   Without knowledge, therefore denied.

205.   Without knowledge, therefore denied.

206.   Without knowledge, therefore denied.

207.   Denied.

## **COUNT I**

## **§ 1985(1) Claim against All Defendants**

208.   Defendants hereby incorporate their response to all other allegations in the Complaint as if fully set forth herein.[16]

209.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

210.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

211.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

---

[16] Plaintiff's incorporation of all other allegations of the Complaint is an impermissible shotgun pleading, but to preserve all defenses to the same Defendants likewise plead their responses to all Plaintiff's allegations.

212.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

## **COUNT II**

### **§ 1985(3) Claim against All Defendants**

213.   Defendants hereby incorporate their response to all other allegations in the Complaint as if fully set forth herein.[17]

214.   Denied.

215.   Denied.

216.   Denied.

217.   Denied.

218.   Denied.

219.   Denied.

220.   Denied.

221.   Denied.

222.   Denied.

## **COUNT III**

---

[17] Plaintiff's incorporation of all other allegations of the Complaint is an impermissible shotgun pleading, but to preserve all defenses to the same Defendants likewise plead their responses to all Plaintiff's allegations.

## Civil Conspiracy against All Defendants

223. Defendants hereby incorporate their response to all other allegations in the Complaint as if fully set forth herein.[18]

224. Denied.

225. Denied.

226. Denied.

227. Denied.

228. Denied.

229. Denied.

## COUNT IV

## Tort of Injurious Falsehoods against All Defendants

230. Defendants hereby incorporate their response to all other allegations in the Complaint as if fully set forth herein.[19]

231. This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

232. This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

---

[18] Plaintiff's incorporation of all other allegations of the Complaint is an impermissible shotgun pleading, but to preserve all defenses to the same Defendants likewise plead their responses to all Plaintiff's allegations.

[19] Plaintiff's incorporation of all other allegations of the Complaint is an impermissible shotgun pleading, but to preserve all defenses to the same Defendants likewise plead their responses to all Plaintiff's allegations.

233.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

234.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

235.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

236.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

237.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

238.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

239.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

240.   This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

## COUNT V

## Intentional Infliction of Emotional Distress against All Defendants

241. Defendants hereby incorporate their response to all other allegations in the Complaint as if fully set forth herein.[20]

242. Denied.

243. Denied.

244. Denied.

245. Denied.

246. Denied.

247. Denied.

248. Denied.

## COUNT VI

### Abuse of Process against Defendants, Hugh and Susan Bennett

249. Defendants hereby incorporate their response to all other allegations in the Complaint as if fully set forth herein.[21]

250. This claim has been dismissed and no response is required. If one were required, this allegation would be denied.

WHEREFORE Defendants request this Court enter judgment in favor of Defendants and against Plaintiff, to include costs.

---

[20] Plaintiff's incorporation of all other allegations of the Complaint is an impermissible shotgun pleading, but to preserve all defenses to the same Defendants likewise plead their responses to all Plaintiff's allegations.

[21] Plaintiff's incorporation of all other allegations of the Complaint is an impermissible shotgun pleading, but to preserve all defenses to the same Defendants likewise plead their responses to all Plaintiff's allegations.

**DEFENSES**[22]

## First Defense

Plaintiff's claims fail since Defendants' challenged speech was almost exclusively them speaking to the County Commission, the Library Board, or Plaintiff herself. The First Amendment prohibits any government action that would "abridge[e] the freedom of speech," granting people the freedom to stand up and speak out on any matter of public concern. U.S. Const. amend. I. Plaintiff is seeking to impose liability on Defendants based solely on their exercising their First Amendment rights to speak on matters of public concern. Plaintiff's Complaint is barred by the First Amendment as such activity is protected and cannot form the basis for liability.

## Second Defense

Plaintiff's claims fail since Defendants' actions are protected by the First Amendment right to petition. The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances," granting people not only the freedom to stand up and speak out against perceived injustices, but also protects their right to take action to change things taking place in their government of which they disapprove. U.S. Const. amend. I. Plaintiff is seeking to impose liability on Defendants based solely on their

---

[22] Defendants recognize this Court's ruling on Defendants' Motion to Dismiss but plead these defenses in order to preserve them for further review in this case.

exercising their First Amendment rights to speak on matters of public concern and to petition their government to address their concerns. Plaintiff's Complaint is barred by the First Amendment as such activity is protected and cannot form the basis for liability

## **Third Defense**

Plaintiff's § 1985 claim and civil conspiracy claim fail to state a cause of action. Plaintiff has pled that her § 1985(3) claim and civil conspiracy claim are based on purported violations of the Fourteenth Amendment. *See* Doc. 43, p. 40, ¶ 226. Plaintiff's § 1985 claim and civil conspiracy claim fail since she cannot show that any actions by Defendant were motivated by a race-based or other class-based invidiously discriminatory animus. Further, Plaintiff's § 1985 claim and civil conspiracy claim also fail since she cannot show that any right was violated that is protected against private enforcement. Finally, Plaintiff's § 1985 claim and civil conspiracy claim fail to state a cause of action since Defendants are not state actors and were not acting in any "state" capacity or acting "in concert" with any state or public official.

## **Fourth Defense**

Plaintiff's civil conspiracy claim fails to state a cause of action since Plaintiff has not pled any valid tort claim as the basis for her civil conspiracy claim.

## Fifth Defense

Plaintiff is a public figure, or at least a limited purpose public figure, and her Intentional Infliction of Emotional Distress claim must satisfy the "actual malice" standard in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and must include: (1) a false statement of fact; and (2) made with actual malice. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) In order to prove her claim, Plaintiff must prove Defendants made a false statement of fact and "prove[] with *convincing clarity* that the statement was made with actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Dworkin v. L.F.P., Inc.*, 839 P.2d 903, 912 (Wyo. 1992). Plaintiff cannot satisfy the actual malice standard.

## Sixth Defense

Plaintiff fails to state a claim for Intentional Infliction of Emotional Distress. Plaintiff must plead facts showing there was "extreme and outrageous conduct" and that she suffered "severe emotional distress." *Hoblyn v. Johnson*, 2002 WY 152, ¶ 39 (Wyo. 2002). Plaintiff cannot show either.

## Seventh Defense

Plaintiff's claims are barred as Defendants are entitled to qualified immunity as to Plaintiff's § 1985 and civil conspiracy claims (based on purported violations of the Fourteenth Amendment) as their actions did not violate clearly established constitutional rights. Plaintiff fails to demonstrate that Defendants' conduct was objectively unreasonable under existing law at the time. Qualified immunity shields individuals from liability unless their actions contravene well-defined statutory or constitutional protections, which plaintiff has not alleged and cannot establish. Thus, Defendants are entitled to qualified immunity and Plaintiff's § 1985 and civil conspiracy claims (based on purported violations of the Fourteenth Amendment) are barred.

**Eighth Defense**

To the extent any third party is liable in whole or in part for the acts or omissions complained of by Plaintiff, Defendants are not liable to Plaintiff to the extent of that third party's liability.

**Ninth Defense**

Defendants are entitled to a set-off for all monies received by Plaintiff from any third party to compensate her, in full or in part, for the damages claimed in this case.

WHEREFORE Defendants request this Court enter judgment in favor of Defendants and against Plaintiff, to include costs.

DATED: May 3, 2025.

Respectfully submitted,

/s/ Jeremy D. Bailie
Jeremy D. Bailie (*Pro Hac Vice*)
Florida Bar No. 118558
**WEBER, CRABB & WEIN, P.A.**
5453 Central Avenue
St. Petersburg, FL 33710
Telephone: (727) 828-9919
Facsimile: (727) 828-9924
Primary: Jeremy.Bailie@webercrabb.com
Secondary:
honey.rechtin@webercrabb.com
natalie.deacon@webercrabb.com

D. Stephen Melchior, Esquire
**Melchior Law Firm, PC**
Wyoming Bar No.: 5-2885
Phone: (307) 637-2323
Fax: (307) 637-2313
Email: steve@melchlaw.com
2010 Warren Avenue
Cheyenne, WY 82001
Local Counsel

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 3, 2025, a true and correct copy of the

foregoing was filed with the Clerk of Court using the CM/ECF portal, which

will serve all counsel of record:

Qusair Mohamedbhai
Iris Halpern (Pro Hac Vice)
Azra Taslimi (Pro Hac Vice)

31

RATHOD | MOHAMEDBHAI LLC
2701 Lawrence Street
Denver, CO 80205
qm@rmlawyers.com
ih@rmlawyers.com
at@rmlawyers.com
*Attorneys for Plaintiff*

*/s/ Jeremy D. Bailie*
Attorney